## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Anna Bach, | |
| Plaintiff, | Case No. 0:21-cv-1242 |
| v. | |
| | **COMPLAINT** |
| Midwest Resale Specialist Inc, | |
| Defendant. | JURY TRIAL DEMANDED |

## <u>INTRODUCTION</u>

1.    The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2.    This action arises out of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by Defendant and its collection agents in their illegal efforts to collect a consumer debt from Plaintiff.

## JURISDICTION

3.      Jurisdiction of this Court arises under U.S.C. § 1692k(d) and common law.

4.      Venue is proper because the acts and transactions occurred here, Plaintiff resides in Minnesota, and Defendant transacts business here.

5.      Defendant has transacted business within the State of Minnesota by attempting to collect a debt from Plaintiff via the telephone and mails while Plaintiff was located within and permanently residing within the State of Minnesota.

6.      Defendant has transacted business within the State of Minnesota by operating a collection agency, making collection calls into Minnesota, and directing debt collection activities to Minnesota.

## PARTIES

7.      Plaintiff Anna Bach (hereinafter "Plaintiff") is a natural person who resides in the City of Woodbury, County of Washington, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law.

8.      Plaintiff has suffered an injury in fact that is fairly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

9.      Defendant Midwest Resale Specialist Inc, (hereinafter "Defendant") is a corporation formed under Minnesota law and a collection agency licensed in Minnesota doing business under the registered name "Springer Collections" and operating from a principal office address of 412 South 4th Street, Suite 1250-E, Minneapolis, MN 55415, with a registered agent of process name SICInc2019 Companies, doing

business from a principal address of address of 412 South 4th Street, Suite 1250-E, Minneapolis, MN 55415 and its registered agent Aaron Hanson with a mailing address of 710 Madison Street NE, #1, Minneapolis, MN 55413, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

10.   Within one year immediately preceding the filing of this complaint, Defendant attempted to collect from Plaintiff a financial obligation that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, an obligation for unpaid rent from an apartment lease in the State of Minnesota and a prior judgment of $542 taken by the apartment complex on October 10, 2018.

11.   Plaintiff disputes this alleged debt, the final bill on this account, and any remaining balance, and is represented by the undersigned counsel both with respect to this debt and to the claims made herein.

### *Defendant's Illegal Collection Call #1*

12.   Sometime on or around April 20, 2021, Defendant contacted Plaintiff in an attempt to collect this debt by telephone in Minnesota.

13.   Defendant's employee, "Debbie" called Plaintiff from phone number (612) 474-4588 left a voicemail in an attempt to collect this debt.

14.   Debbie failed to provide Plaintiff with the communication notices required by 1692e(11), on this occasion.

15.   Upon good faith information and belief, Defendant has no person licensed to collect debts under the name "Debbie" in the State of Minnesota, according to the license lookup tool at the Minnesota Commerce Department website. https://www.pulseportal.com/Inquiry, last accessed May 18, 2021 at 4:42 p.m.

### *Defendant's Illegal Collection Call #2*

16.   Sometime on or around May 3, 2021, Defendant contacted Plaintiff in an attempt to collect this debt by telephone in Minnesota.

17.   Defendant's employee, "Debbie" again called Plaintiff from phone number (612) 474-4588 left a voicemail in an attempt to collect this debt.

18.   Debbie failed to provide Plaintiff with the communication notices required by 1692e(11), on this occasion.

### *Defendant's Illegal Interest Charges on Prior Judgment*

19.   In the past year, Defendant has sent Plaintiff a series of collection letters demanding an ever-increasing amount of money on the unsatisfied judgment of $542 which was docketed on October 10, 2018.

20.   Defendant has repeatedly demanded interest and/or other illegal collection charges at a rate far in excess of the statutory rate of simple interest (4%) permitted under Minnesota law for judgments.

21.   Defendant's demands from Plaintiff payment for amounts not due and owing on this judgment obligation was fraud, because it intended that Plaintiff would rely on its representations as to the amount of additional interest on this judgment obligation, and Plaintiff in fact relied on those material misrepresentations to her detriment.

22.   It was a false and deceptive debt collection practice for Defendant's employee to misrepresent the amount due and owing by Plaintiff for this judgment.

23.   The above-described communications and conduct from Defendant toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692e(11), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### Defendant's Illegal Interest Charges on Other Apartment Lease Obligation

24.   In the past year, Defendant has sent Plaintiff a series of collection letters demanding an ever-increasing amount of money on the apartment lease of $5,586.96.

25.    Defendant has repeatedly demanded interest and/or other illegal collection charges at a rate far in excess of the statutory rate of simple interest (6%) permitted under Minnesota law for contracts which do not contain an interest rate provision. Bros. Fire Prot. Co., d/b/a Bros. Fire & Sec., Respondent, v. John B Przymus, et al., Appellants., No. A20-0920, 2021 WL 1522660, at *6 (Minn. Ct. App. Apr. 19, 2021).

26.   Defendant's demands from Plaintiff for amounts not due and owing on this alleged obligation was fraud, because Defendant intended that Plaintiff would rely on its misrepresentations as to the amount of additional interest on this obligation, and Plaintiff in fact relied on those material misrepresentations to her detriment.

27.   It was a false and deceptive debt collection practice for Defendant's employee to misrepresent the amount due and owing by Plaintiff for this alleged obligation.

28. The above-described communications and conduct from Defendant toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692e(11), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### *False Threats of Legal Action Against Plaintiff's Future Estate*

29. On or about June 8, 2020, Plaintiff's mother called and spoke with a debt collector employed by Defendant.

30. At that time, Plaintiff's mother, Connie Brookshaw, advised Defendant's collection employee that her adult daughter suffered from glioblastoma, a very aggressive form of brain cancer, and that Plaintiff could not pay this alleged debt.

31. On about July 2, 2020, Ms. Brookshaw called Defendant again and reaffirmed that Plaintiff had brain cancer and would be unable to pay this debt.

32. On or about February 15, 2021, Ms. Brookshaw called Defendant and spoke with Defendant collection employee, Teresa.

33. Ms. Brookshaw reiterated to Teresa facts about Plaintiff's medical condition and again stated that Plaintiff could not pay this alleged debt.

34. In response, Teresa asserted to Ms. Brookshaw that Defendant would try to collect this alleged debt from Plaintiff's estate.

35. Threatening to collect this debt from an estate was a threat to take a legal action which Defendant was not entitled to take and/or did not intend to take.

36.   Making a claim against an estate for a corporation, like the apartment complex Defendant was collecting for, or asserting the legal right and propriety of doing so, is inherently the practice law in Minnesota. Minn.Stat. § 481.02, subd. 1.

37.   Upon good faith information and belief, "Teresa" is in fact Teresa Mae Turner, a licensed debt collector employed by Defendant, as she is the only debt collector currently licensed with Defendant as a debt collector by the Commerce Department within the State of Minnesota with that name. https://www.pulseportal.com/Inquiry, last accessed May 18, 2021 at 4:01 p.m.

38.   Moreover, a check of the attorney license database maintained by the State of Minnesota does not show any person named Teresa Mae Turner licensed to practice law in Minnesota.  https://mars.courts.state.mn.us/, last accessed May 18, 2021, at 4:05 p.m.

39.   It was a false and deceptive debt collection practice in violation of the FDCPA for Teresa to threaten that Defendant would bring a claim against Plaintiff's estate when Defendant had neither the legal right nor the ability to do so.

40.   It was the unauthorized practice of law for Teresa to hold herself out to Ms. Brookshaw by word, letter or deed, as competent to practice law in Minnesota when she was not licensed to do so.  *Id.*

41.   It was also a violation of numerous provisions of Minnesota debt collection laws, designed to protect consumers such as the Plaintiff from illegal debt collection tactics such as those engaged in by Teresa, to threaten legal action against Plaintiff's potential future estate.

**332.37 PROHIBITED PRACTICES.**

No collection agency or collector shall:

(1)  in collection letters or publications, or in any communication, oral or written threaten wage garnishment or legal suit by a particular lawyer, unless it has actually retained the lawyer;

…

(4) furnish legal advice or otherwise engage in the practice of law or represent that it is competent to do so;

…

(6) exercise authority on behalf of a creditor to employ the services of lawyers unless the creditor has specifically authorized the agency in writing to do so and the agency's course of conduct is at all times consistent with a true relationship of attorney and client between the lawyer and the creditor;

Minn.Stat. §332.37.

42.    The above-described communications and conduct from Defendant toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(7), 1692e(9), 1692e(10), 1692e(11), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### *False Implication That Plaintiff's Mother Was Responsible For Debt*

43.    On or about May 3, 2021, Ms. Brookshaw called Defendant in response to a call that Plaintiff had received the week before from Defendant's debt collectors.

44.    Ms. Brookshaw spoke with "Debbie" who is employed by Defendant as a debt collector.

45.     Debbie told Ms. Brookshaw that the apartment complex, Bryant Oaks, would not settle the alleged debt for less than the full amount of the debt because Defendant had seen that Ms. Brookshaw was recently listed on the unrelated sale of a home— part of a property settlement related to her divorce.

46.     Debbie implied to Ms. Brookshaw that she, the mother of the 32-year old Plaintiff, would be responsible for paying this debt.

47.     Ms. Brookshaw has absolutely no obligation, legal or otherwise, for this alleged debt of her adult daughter, the Plaintiff.

48.     Making a claim against an estate for a corporation, like the apartment complex Defendant was collecting for, or asserting the legal right and propriety of doing so, is inherently the practice law in Minnesota. Minn.Stat. § 481.02, subd. 1.

49.     "Debbie" is not a debt collector currently licensed with Defendant as a debt collector by the Commerce Department within the State of Minnesota. https://www.pulseportal.com/Inquiry, last accessed May 18, 2021 at 4:42 p.m.

50.     It is illegal collect consumer debts in Minnesota without first having obtained a debt collector's license.

      **332.33 LICENSING AND REGISTRATION.**

      Subdivision 1.**Requirement.**

      Except as otherwise provided in this chapter, no person shall conduct within this state a collection agency or engage within this state in the business of collecting claims for others as defined in sections 332.31 to 332.44, without having first applied for and obtained a collection agency license. A person acting under the authority of a collection agency, as a collector, must first register with the commissioner under this section. A registered collector may use one

additional assumed name only if the assumed name is registered with and approved by the commissioner.

Subd. 2.**Penalty.**

A person who carries on business as a collection agency without first having obtained a license or acts as a collector without first having registered with the commissioner pursuant to sections 332.31 to 332.44, or who carries on this business after the revocation, suspension, or expiration of a license or registration is guilty of a misdemeanor.

Minn.Stat §332.33.

51.    It was a false and deceptive debt collection practice in violation of the FDCPA for Debbie to threaten that Defendant would bring a claim against Ms. Brookshaw when Defendant had neither the legal right nor the ability to do so.

52.    It was the unauthorized practice of law for Debbie to hold herself out to Ms. Brookshaw by word, letter or deed, as competent to practice law in Minnesota when she was not licensed to do so.  *Id.*

53.    It was also a violation of numerous provisions of Minnesota debt collection laws, designed to protect consumers such as the Plaintiff from illegal debt collection tactics such as those engaged in by Debbie, to threaten legal action against Plaintiff's potential future estate.  Minn.Stat. §332.37.

54.    The above-described communications and conduct from Defendant toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(7), 1692e(9), 1692e(10), 1692e(11), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

-10-

### *Unauthorized Practice of Law*

55.    Minnesota Statute § 481.02 states in pertinent part:

> **481.02 UNAUTHORIZED PRACTICE OF LAW.**
>
> Subdivision 1. Prohibitions. **It shall be unlawful for any person or association of persons, except members of the bar of Minnesota admitted and licensed to practice as attorneys at law, to** appear as attorney or counselor at law in any action or proceeding in any court in this state to maintain, conduct, or defend the same, except personally as a party thereto in other than a representative capacity, or, **by word, sign, letter, or advertisement, to hold out as competent or qualified to give legal advice or counsel, or to prepare legal documents, or as being engaged in advising or counseling in law or acting as attorney or counselor at law**, or in furnishing to others the services of a lawyer or lawyers, or, for a fee or any consideration, to give legal advice or counsel, perform for or furnish to another legal services, or, for or without a fee or any consideration, to prepare, directly or through another, for another person, firm, or corporation, any will or testamentary disposition or instrument of trust serving purposes similar to those of a will, or, for a fee or any consideration, to prepare for another person, firm, or corporation, any other legal document, except as provided in subdivision 3.
>
> Subd. 2. Corporations. No corporation, organized for pecuniary profit, **except an attorney's professional firm organized under chapter 319B**, by or through its officers or employees or any one else … shall to any extent engage in, or hold itself out as being engaged in, the business of supplying services of a lawyer or lawyers; …

        [Bold emphasis added.]

56.    Defendant's employee "Teresa" is not an attorney licensed to practice law in Minnesota.

57.    Upon good faith information and belief, Defendant's employee "Debbie" is not an attorney licensed to practice law in Minnesota.

58.  Plaintiff could reasonably be misled into believing that Defendant had the right to sue Plaintiff's estate in Minnesota to collect this debt, when it did not.

59.  Ms. Brookshaw could reasonably be misled into believing that Defendant had the right to sue her in Minnesota to collect this debt from here, when it did not.

60.  Plaintiff could reasonably be misled into believing that Defendant's collection employees were authorized to practice law here in Minnesota, when they were not.

61.  As described above, Defendant's collection employees made specific legal statements regarding the collection of this alleged debt within the State of Minnesota to Plaintiff which demanded money for the payment of this debt.

62.  By holding themselves out as competent to practice law by word, letter, or deed, and engaging in lawyerly collection activities with respect to Plaintiff within the State of Minnesota, Defendant's employees have therefore engaged in the unauthorized practice of law with respect to Plaintiff and are therefore liable for actual damages, attorney's fees, and costs.

63.  The collection activities undertaken by Defendant's employees without first having become properly licensed as attorneys under Minnesota law constitutes the unauthorized practice of law in violation of Minn. Stat. § 481.02, Subd. 1.

64.  These collection calls to Plaintiff and her mother by Defendant suggesting that these communications were from lawyers, authorized to engage in the practice of law within Minnesota when they were not, constitutes the unauthorized practice of law with respect to Plaintiff in violation of Minn. Stat. § 481.02, Subd. 1, and Defendant therefore is liable for Plaintiff's actual damages, attorney's fees, and costs.

65.    It was an independently false and deceptive debt collection practice by Defendant's employees to state, suggest, or imply that they were in fact authorized to practice law within the State of Minnesota when they were not.

66.    The debt collection activities within the State of Minnesota by Defendant's employees, as unlicensed attorneys, were actions done in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(3), 1692e(5), 1692e(9), 1692e(10), and 1692f, amongst others.

### *Summary*

67.    The above-described collection conduct by Defendant in its efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA.

68.    These collection actions taken by Defendant, and the collection employees employed by Defendant, were made in violation of multiple provisions of the FDCPA, including but not limited to all of the provisions of those laws cited herein.

69.    These violations by Defendant were knowing, willful, negligent and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

70.    Defendant's collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm because the FDCPA provides Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt.

71. Defendant's deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant's collection efforts because Plaintiff could not adequately respond to the Defendant's demand for payment of this debt.

### *Respondeat Superior Liability*

72. The acts and omissions herein of the individuals employed to collect debts by Defendant, and the other debt collectors employed as agents of Defendant who communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant.

73. The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

74. By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant.

75. Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the federal law cited herein in its attempts to collect this debt from Plaintiff.

### **TRIAL BY JURY**

76. Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues

so triable.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 *et seq.*

77.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78.  The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*, with respect to Plaintiff.

79.  As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant herein.

## COUNT II.

## FRAUD

80.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

81.  The Minnesota Court of Appeals has held:

> A prima facie case of fraudulent misrepresentation requires the plaintiff to establish that

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the other party suffered pecuniary damage as a result of the reliance.

> *Hoyt Props., Inc.,* 736 N.W.2d at 318 (quotation omitted). "A misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading." *M.H. v. Caritas Family Servs.,* 488 N.W.2d 282, 289 (Minn.1992).

Beckman v. Wells Fargo Bank, N.A., No. A15-1819, 2016 WL 5640664, at *5–6 (Minn. Ct. App. Oct. 3, 2016).

82. During the collection communications transmitted by Defendant to Plaintiff in the past year, Defendant repeatedly and falsely represented to Plaintiff that she was obligated to pay interest and other charges on these obligations in excess of the amounts permitted by Minnesota law, when, in material fact, Plaintiff was not so obligated.

83. Defendant knew that the alleged debt it was attempting to collect from Plaintiff had been padded with illegal and impermissible collection fees, and that therefore Plaintiff had no legal obligation to pay it, but it withheld that fact from Plaintiff and instead told Plaintiff that she must pay it.

84. As a licensed Minnesota collection agency, Defendant knew or should have known that it had no right to add impermissible collection fees under the FDCPA or fees

that were not provided under the contract or otherwise permitted by law. See <u>Kojetin</u> <u>v. C U Recovery, Inc.</u>, 212 F.3d 1318 (8th Cir. 2000).

85. Plaintiff has suffered actual pecuniary damages as a result of this Defendant's deliberate fraudulent misrepresentations of these material facts.

86. Defendant's misrepresentations that Plaintiff owed this amount, when she in fact did not, were material misrepresentations of fact because they influenced Plaintiff's judgment and decisions regarding entering into the agreement to repay it.

87. Defendant knew that its misrepresentations to Plaintiff were false at the time Defendant made them.

88. Defendant's misrepresentations were made intending that Plaintiff would rely on them.

89. Plaintiff reasonably relied upon and acted upon Defendant's misrepresentations and suffered damages in wasted time seeking legal advice, mileage to and from an attorney's office, and the costs of litigation in this matter to vindicate Plaintiff's rights under the FDCPA, as well as other damages.

## COUNT III.

## UNAUTHORIZED PRACTICE OF LAW

## MINN. STAT. § 481.02

90. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

91. Defendant's foregoing acts, as described herein, in attempting to collect this debt by conducting unlicensed telephonic legal collection activities and falsely representing

itself as authorized to provide legal services within Minnesota on behalf of its corporate client, was the unauthorized practice of law in Minnesota.

92.   Plaintiff is therefore entitled to declaratory relief pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a, declaring Defendant's actions as described herein to be the unauthorized practice of law in violation of Minn. Stat. § 481.02.

93.   Plaintiff is also entitled to injunctive relief pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a, enjoining Defendant from engaging in the unauthorized practice of law in violation of Minn. Stat. § 481.02.

94.   Plaintiff is also entitled to Plaintiff's attorney's fees, costs of investigation, and costs pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

- for an award of actual and statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant and for Plaintiff;

- for actual damages for fraud that were directly caused by relying on the fraudulent misrepresentations made by Defendant to Plaintiff regarding this alleged debt;

- for a declaration that Defendant's actions as described herein to be the unauthorized practice of law in violation of Minn. Stat. § 481.02;

- for an order enjoining Defendant from engaging in the unauthorized practice of law in violation of Minn. Stat. § 481.02;

- for an award of Plaintiff attorney's fees, costs of investigation, and costs pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a;

- and for such other and further relief as may be just and proper.

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

Dated: May 18, 2021

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
2828 University Ave. SE, Suite 202
Minneapolis, Minnesota 55414-4127
Telephone:  (612) 379-8800
pbarry@lawpoint.com

*Attorney for Plaintiff*

-19-

<u>**VERIFICATION OF COMPLAINT AND CERTIFICATION**</u>

STATE OF MINNESOTA       )
                                ) ss
COUNTY OF WASHINGTON   )

Pursuant to 28 U.S.C. § 1746, Plaintiff Anna Bach verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on   May 18, 2021         _(May 18, 2021 17:50 CDT)_
                                          Signature

**NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")**

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

<u>Miller v. Lankow</u>, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cell phones**.  The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI**. This demand is reasonable and necessary.  Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible.  For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible.  Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.** You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand.  Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence.  You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI.  Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.**  You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy or alter ESI.**  This is not a concern that is unique to you or your organization.

Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence. You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control. You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.** In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods imposes a significant threat of spoliation and data loss. Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.** Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.** System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files. As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved.** Alternatively, if you

promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.**  If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics.  Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.  I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay.  Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.**  If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention.  Thank you for your anticipated cooperation in this vital matter.

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

Dated: May 18, 2020

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
2828 University Ave. SE, Suite 202
Minneapolis, Minnesota 55414-4127
Telephone:  (612) 379-8800
pbarry@lawpoint.com

*Attorney for Plaintiff*